### NORTHUP et al. v. EAKES et al.

No. 9183—Opinion Filed Nov. 19, 1918.

Rehearing Denied Feb. 11, 1919.

(178 Pac. 266.)

(Syllabus.)

**1. Negligence—Concurring Negligence — Liability.**

Where, although concert is lacking, the separate and independent acts or negligence of several combine to produce directly a single injury each is responsible for the entire result, even though his act or neglect alone might not have caused it.

**2. Oil and Gas—Negligence—Fire Communicated from Oil Well—Joint and Several Liability.**

Where several persons and corporations owning and operating separate oil and gas leases negligently allowed crude oil to escape from their respective leases into a nearby creek, where it became ignited and was carried by the wind and the natural flow of the stream upon the barn of another, situated upon such stream which barn, together with its contents, was thereby totally destroyed, they are jointly and severally liable for the wrongdoing, and the injured party may, at his option, institute an action and recover against one or all of those contributing to his injury.

**3. Negligence—"Proximate Cause."**

In order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of any injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act; and that it ought to have been foreseen in the light of the attendant circumstances.

**4. Oil and Gas—Escape of Crude Oil—Fire—Proximate Cause.**

In the circumstances of this case the act of the defendants in negligently allowing the crude oil to escape into the stream was the proximate cause of the injury, although the oil was ignited by unknown means and carried against the premises of the plaintiff by the wind and the natural flow of the stream.

Error from District Court, Okmulgee County; Chas. G. Watts. Assigned Judge.

Action by Frank D. Eakes and another against George Northup and others. Demurrer to second amended petition overruled, and judgment for plaintiffs, and Northup and others bring error. Affirmed.

Fred M. Carter, for plaintiffs in error.

C. B. McCrory, George C. Beidleman, and Embry, Crockett & Johnson, for defendants in error.

KANE, J. This was an action commenced by the defendant in error Frank D. Eakes against the plaintiff in error, for the purpose of recovering damages for loss of his barn by fire.

Hereafter, for convenience, the parties will be designated "plaintiffs" and "defendants," respectively, as they appeared in the trial court.

Originally the action was against George

Northup, T. A. Johnson, O. F. McConnell, N. E. Traywick, and a large number of other persons and corporations. The plaintiffs alleged that each of the several defendants named in said petition were the owners of separate oil and gas leases, and as such owners were engaged in producing therefrom crude oil; that said defendants in the operation of said oil leases permitted crude oil to flow from their respective leases into a small creek above the premises of the plaintiff, which crude oil flowed down said creek upon the premises of said plaintiff and in close proximity to his barn; that on the 14th day of March, 1914, the oil on said creek became ignited, and the fire thus started was carried against the barn of the plaintiff by the wind and the natural flow of the stream, completely destroying the same together with its contents.

Thereafter all of said defendants except the Twin State Oil Company filed separate demurrers to plaintiff's petition upon the ground, among others, that there was a misjoinder of causes of action set out in plaintiff's petition, which demurrers were sustained by the trial court.

Thereafter plaintiff filed his amended petition, making the same parties defendants, which amended petition was substantially the same as the original petition, except in one paragraph it was alleged:

"That the said defendants, and each of them, on and prior to said date, wilfully, carelessly, and negligently and unlawfully and concurrently permitted the oil, waste matter, and inflammable products from their said wells on said leasehold estates to escape therefrom and from their said premises, respectively, and to flow concurrently into the said creek or stream, and the said inflammable matter from their respective premises combined and together ran down, through, and over the premises of the plaintiff, Frank D. Eakes," etc.

Thereafter the defendants filed separate demurrers to said amended petition, which demurrers were also sustained. Thereafter the plaintiff filed his second amended petition against George Northup, T. A. Johnson, O. F. McConnell, O. P. Baylon, and N. E. Traywick, which petition is substantially the same as the original and amended petition, except it omits the description of the oil and gas mining leases operated by the other defendants under the former petition and omits any allegations as to any persons, companies, or corporations causing or permitting waste oil to flow into said creek, except plaintiffs in error.

Thereafter these defendants filed their demurrer to said second petition, which was overruled, after which the issues were made up and cause proceeded to trial, which trial resulted in a judgment for the plaintiff for the full amount of the loss occasioned by the destruction of his barn and its contents. It is to reverse this judgment that this proceeding in error was commenced.

Counsel for defendant state their grounds for reversal in their brief as follows:

"(1) The defendants in error changed the theory of their lawsuit when the court sustained the several demurrers of all the defendants in the cause to the first amended petition. It was the theory of the defendants in error, in both the original and the first amended petition, that plaintiffs in error, together with all other defendants named in said original and first amended petition, were jointly and severally liable for the damages complained of. But the court sustained the demurrer upon the ground of misjoinder of cause of action, and the defendants in error had to and did elect, when those demurrers were sustained, to stand upon their first amended petition and adhere to their theory of joint and several liability and appeal from the judgment of the court sustaining said demurrer, or else adopt the theory of the trial court when the court held that the several defendants sued were not jointly and severally liable. As before shown, defendants in error elected to accept the theory of the trial court, viz.: That they had a separate cause of action against each of the several defendants named in the original petition or against each of the various lease owners, and thereupon dismissed the action as to all of the defendants who operated numerous other leases along said creek except as to plaintiff's in error who were the joint owners of only one of those various leases. It is the contention of plaintiffs in error that having elected to dismiss as to all other defendants and sue these plaintiffs in error separately as was done under the second amended petition, the defendants thereby adopted the theory of the trial court when the demurrers were sustained, and filed their second amended petition against these plaintiffs in error upon the theory that they did not have a right of action jointly and severally against all of the several lease owners who were made defendants to the original petition.

"(2) The second ground upon which plaintiffs in error based their contention that the judgment of the trial court should be reversed is that under the law plaintiffs in error are not joint tort-feasors with the other several lease owners who were operating oil leases adjacent to the property of plaintiffs in error, and, not being joint tort-feasors, plaintiffs in error cannot be held liable for

all the damages caused or contributed to by each and all of the other various lease owners adjacent to plaintiffs' property, and from which other leases the undisputed testimony shows that large quantities of refuse and waste oil had been permitted to flow into said creek and there intermingle and mix with the oil, if any, that flowed from the lease of plaintiffs in error, and, after so intermixing, flowed down the creek to the property of defendant in error, Eakes, and was ignited by some unknown agency, resulting in the burning of plaintiff's property.

"(3) The third ground upon which plaintiffs in error urged a reversal of the judgment of the lower court is that there were three separate, independent, and intervening causes, the three combined being the direct and proximate cause of the injury and damage complained of, but for which separate independent, and intervening cause defendants in error would not have sustained any damage, and that the wrong of plaintiffs in error, if any, was a remote and not the direct and proximate cause of the injury and damage complained of. The three separate, independent, and intervening causes which were the direct and proximate causes of the injury are:

"(a) The construction of a stone dam across the creek in close proximity to the barn of defendant in error Eakes, which caused the water and waste oil in said creek to collect in large quantities at that point and prevented the oil from flowing down the channel of the creek past and below plaintiff's barn.

"(b) The setting on fire of the weeds and grass near the creek, or of the oil which had been thus collected and retained by said stone dam, by some person or unknown agency, without which plaintiff's property would not have burned.

"(c) The blowing by the wind of the fire from the oil on the creek upon the bank of the creek to the barn of the defendant in error Eakes, and causing the same to burn. Had the wind blown in the opposite direction on that date the barn of the plaintiff might not have burned."

The various demurrers, no doubt, were sustained by the trial judge, who ruled upon them upon the theory that the various leaseholders who contributed to the destruction of plaintiff's barn by letting the oil from their respective leases flow into the creek were not jointly liable for the loss thus occasioned. When the case came on for trial, however, another district judge presided, who undoubtedly was of the opinion that the various leaseholders were jointly liable, and the cause seems to have been tried upon that theory. It is true that under the ruling of the first district judge the plaintiff was

denied the right of proceeding against the defendants jointly because they held separate leases. But if the judge who tried the cause ruled correctly, the fact that plaintiff was required to dismiss as to part of the defendants and proceed against one defendant or one group of defendants, owning a separate lease, is immaterial, for the reason that, under the rule announced, the plaintiff was entitled to recover the full amount of his loss from the defendants he was obliged to proceed against by the ruling of the judge who sustained the demurrers to his petition. In our judgment the judge who tried the case was right. The applicable principle is stated in 38 Cyc. 488, as follows:

"Where, although concert is lacking, the separate and independent acts or negligence of several combine to produce directly a single injury, each is responsible for the entire result, even though his act or neglect alone might not have caused it. It has been said that 'to make tort-feasors liable jointly there must be some sort of community in the wrongdoing, and the injury must be in some way due to their joint work, but it is not necessary that they be acting together and in concert if their concurring negligence occasions the injury'."

Applying this principle to the facts disclosed by the record, it is clear that while the lessees holding separate leases acted independent of each other, yet their several acts in permitting the oil to flow into the stream combined to produce but a single injury. In these circumstances each is responsible for the entire result, even though his act or neglect alone might not have caused it. We find this rule correctly applied in the following cases: Slater et al. v. Mersereau. 64 N. Y. 138; Arnold v. Chicago, R. I. & P. Ry. et al., 86 Kan. 12, 119 Pac. 373; Luengene v. Consumers' Light, Heat & Power Co., 86 Kan. 866, 122 Pac. 1032; McDaniel v. City of Cherryvale et al., 91 Kan. 40, 136 Pac. 899, 50 L. R. A. (N. S.) 388; City of Kansas City v. Slangstrom, 53 Kan. 431, 36 Pac. 706; Day v. Louisville Coal & Coke Co., 60 W. Va., 27, 53 S. E. 776, 10 L. R. A. (N. S.) 167.

Several of these cases are directly in point, and, as they satisfactorily state the reasoning upon which the rule announced is based, we are constrained to follow them without further comment, although there seems to be some respectable authority to the contrary. We are also unable to agree with the contentions made by counsel under their third ground for reversal. Whilst it is true that there is no infallible rule by which one can distinguish between the proximate and remote causes, still the rules of law are rea-

 sonably well settled, however difficult they may be of application to the varied affairs of life. It is generally held that in order to warrant a finding that negligence, or an act not amounting to wanton injury, is the proximate cause of the injury, it must appear that the injury was the natural and probable circumstance of the neligence or wrongful act, and that it cught to have been foreseen in the light of the attendant circumstances, M. & St. P. Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256. Tried by this test it appears to us that the act of the defendant in negligently discharging crude oil, a highly inflammable substance, into the stream above plaintiff's barn was the proximate cause of the injury, for the reason that the injury done by the floating oil ought to have been foreseen, in the light of all the surrounding circumstances. The defendants cannot be heard to say that they did not know that crude oil was inflammable, or that they had no reason to believe that the crude oil, which they neligently allowed to flow into the creek, would become ignited and be driven by the winds and the natural flow of the stream upon the plaintiff's premises. The question is not whether such an act would produce a conflagration in the majority of cases, but whether it has a decided and natural tendency to produce such a result.

This was the test applied in The Santa Rita, 176 Fed. 890, 100 C. C. A. 360, 30 L. R A. (N. S.) 1210, where it was held, that the discharge by a steamship of fuel oil into the water, which floated under the wharf and became matted with particles of inflammable rubbish and debris on the water, was the proximate cause of the injury to another vessel at the wharf by the burning of the debris, although the oil was ignited by the independent, innocent act of a stranger throwing a lighted cigar into the water. In Kuhn v. Jewett, 32 N. J. Eq. 647, where oil tank cars had been negligently left standing on a grade so that they descended and collided with a locomotive, throwing some of the cars from the track and igniting the oil, which flowed down the stream and set fire to the plaintiff's buildings, it was held that where the burning matter is oil, a running stream may form a natural link in the chain of causation. In Brennan Construction Co. v. Robert C. Cumberland et al., 29 App. D. C. 554, 15 L. R. A. (N. S.) 535, 10 Ann. Cas. 865, it was held that the escaping of oil from the tank car near a river bank is the proximate cause of the injury caused by the oil to boats lower down the stream, where, from the location,

the laws of nature would carry escaping oil to the boats.

Whilst the general question of whether a particular mischief was the result of a particular default has been often before the courts, few cases have considered the question of the discharge of oil into a stream as the proximate cause of fire resulting therefrom. For this reason, we confine ourselves to the citation of such authorities as seem to us to be helpful in the application of well-settled rules to the particular facts of our case.

For the reasons stated, the judgment of the court below is affirmed.

All the Justices concur.