## ST. LOUIS-S. F. RY. CO. et al. v. GILBERT.

No. 28904.    Oct. 24, 1939.

J. W. Jamison, of St. Louis, Mo., and Cruce, Satterfield & Grigsby and Ben Franklin, of Oklahoma City, for plaintiffs in error.

Johnson & McGee, of Pawnee, for defendant in error.

BAYLESS, C. J. St. Louis-S. F. Railway Company, a corporation, through its receivers, appeals from a judgment of the district court of Pawnee county based upon the verdict of a jury, in favor of T. T. Gilbert, for personal injuries sustained on account of the asserted negligence of the company.

Gilbert arranged to ship cattle over the lines of company and was using the cattle pen and loading facilities of the company at Morrison, Okla., when he was injured. Gilbert alleged several distinct acts of negligence, viz.: Failure to have the premises lighted (the incident occurred at night), failure to maintain the pen and loading platform in a proper state of repair; and the promptings of agents of company to hurry, by reason of which he was caused to fall and injure himself. We are of the opinion, since reading the record and the briefs, that Gilbert's only tenable charge of negligence is the second. The first was not presented and is not urged here with any seriousness, and the third is only incidentally connected with the second. Gilbert's explanation of how he was caused to fall limits the consideration of the negligence involved to the condition of the pen and loading platform.

The pen is located within a few feet of the tracks upon which the cattle cars are placed, and there is a platform built onto the pen protruding still closer to the cars (within 30 inches of the car according to the evidence) at about the level of the floor of the open door of the car. There is a pair of gates that can be opened from the pen to the platform, and when the gates are opened toward the car and are perpendicular thereto, and are extended to the wall of the car, on either side of the car door, and when a bullboard is placed for a floor, a passageway is formed through which the cattle can be driven from the pen into the car. On the outer side of each of the wings of the gate, and fastened thereto by an "eye" arrangement, is an iron bar or pin, pointed at the free end, that can be stuck into the floor of the platform to form a stop or brace to prevent the gate opening wider than a perpendicular position toward the car. On this platform the pin was usually stuck into the platform at a point about two feet from the outer edge of the platform. The length of the pin is not stated in the record. On the night in question one Haynes, a volunteer aiding Gilbert in loading the cattle, noticed that the usual place on the platform for sticking the pin into the platform was worn or rotted to the extent that the pin was protruding through the platform and the gate was not functioning properly. Haynes thereupon moved the pin to another place, a point about three or four inches from the outer edge of the platform, or 20 inches nearer the outer edge than usual. He testified he could not move it inward and main-

tain the proper alignment; that it had to be moved outward, and that the point where he located it was the nearest point that he could find planking of a condition that it would hold, such was the worn or rotted condition of the planking at the particular point. No one present saw him move the pin or knew he did so.

When the last of the cattle were being driven into the last car to be loaded, the agent of the company requested Gilbert to come to the station office to sign some papers relating to the shipment, and indicated that Gilbert should hurry.

Gilbert climbed out of the enclosure over the particular gate mentioned and, according to his statement, when he had reached the bottom of the outside of the gate, he attempted to place his right foot on the platform, but his foot struck the iron pin and he missed the platform and fell. It seems from the record that there had been an earlier trial of this action, and Gilbert had testified then that he did not know what caused his foot to miss the platform. However, during a noon recess in this trial, he went to the scene of the accident and refreshed his memory and testified as follows:

"Because I was out to Morrison in the noon hour and if the iron bar was placed where they say it was placed, I couldn't have did anything but hit it when I came over the gate and stepped on the platform."

We have quoted his testimony on this point, for it relates to the only negligence involved, if there is any negligence.

There is no dispute between Gilbert and the company as to Gilbert's status at the time he was injured, he was a business invitee; nor as to the duty of care owed by the company to him. Likewise, the parties agree that the burden of proof was upon Gilbert to show that the company was guilty of primary negligence and that it proximately caused the injury. The company did not offer evidence, so the only evidence in the record is that of Gilbert.

The dispute between the parties arises over two conflicting issues: Did the company violate its duty toward Gilbert by failing to maintain its property in a reasonably safe condition and thereby bring about the injury? and, is the evidence such that reasonable men might differ respecting the previous question so that the question was for the jury, or is the evidence such that reasonable men would draw but one conclusion therefrom, so that it was a question of law for the court?

In order to determine whether company violated its duty to Gilbert, it is necessary to ascertain what that duty was. The American Law Institute's Restatement of the Law, Torts, vol. 2, page 938, § 343, says:

"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them. * * *"

In the comment on the rule by the eminent law writers who prepared this statement, it is said:

"Such a visitor is entitled to expect that the possessor will take reasonable care to discover the actual condition of the premises and either make them safe or warn him of dangerous conditions."

The basis for the above rule and comment is found in the texts and cases on the general law of negligence, and are an epitome of the general rule to be deduced from such texts and cases.

Negligence in Law, Beven (3d Ed.) vol. 1, page 451, says:

"* * * He is, according to an undoubted course of authority and practice, entitled to the exercise of reasonable care by the occupier to prevent damage from an unusual danger, of which the occupier knows or ought to know. * * *"

And on page 452:

"* * * The occupier shall on his part use reasonable care to prevent damage from unusual dangers. * * *"

Cooley on Torts (4th Ed.) vol. 3, § 440, page 186, says:

"* * * Where he expressly or by implication invites others to come upon the premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit."

45 C. J. 826, § 237, says:

"The owner * * * owes to invitees thereon the duty of keeping the premises in a reasonably safe and suitable condition, so that those whom he has invited to enter upon or use his property shall not be unnecessarily or unreasonably exposed to danger. * * * As however the owner or

occupant is not an insurer of the safety of invitees, he is not required, at his peril, to keep the premises absolutely safe, but the measure of his duty in this respect is reasonable or ordinary care, and in determining whether such care has been exercised it is proper to consider the uses and purposes for which the property in question is primarily intended."

In 20 R. C. L. 55, §§ 51 and 52, the same rule is stated in general language as being a rule about which "The authorities are entirely agreed. * * *" In section 52, on page 57, the reason for the rule is stated:

"The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not to the person injured that a recovery is permitted. In the language of Mr. Justice Harlan (Bennett v. L., etc., R. Co., 102 U. S. 577, 26 L. Ed. 235), the owner is liable to the invited persons for injuries 'occasioned by the unsafe condition of the land or its approaches, if such condition is known to him and not to them, and was negligently suffered to exist, without timely notice to the public or to those who were likely to act upon such invitation'."

This court said in Great American Indemnity Co. v. Deatherage, 175 Okla. 28, 52 P.2d 827, that the owner owed the positive duty to use reasonable care to keep the premises in such state that the invitee shall not be unduly exposed to danger.

From all of these authorities it can be seen that the owner must use reasonable care, that the test is that which would be done by an ordinary and prudent person, and that the danger or the unsafe place or condition must be "unusual," or constitute an "unreasonable risk," or must "unduly expose to danger," or unnecessarily or unreasonably expose to danger.

There is still another element in this. The owner must know that the danger exists, or it must have existed such a length of time that knowledge is imputed.

In discussing the law of negligence, proximate cause is an essential link in arriving at the owner's liability for injuries resulting from his negligence. And in discussing proximate cause it is said that the owner must foresee the harm likely to arise from the existing condition. In addition to knowledge, actual or constructive, the knowledge must be of a character that would cause an ordinary or prudent man to anticipate or foresee that harm is likely

to result. Missouri, K. & T. Ry. Co. v. Stanton, 78 Okla. 167, 189 P. 753; Ponca City Ice Co. v. Robertson, 67 Okla. 86, 169 P. 1111; Corrigan v. Oklahoma Coal Co., 68 Okla. 35, 171 P. 47, and other cases. This is simply a concomitant of the rule that a man must anticipate the natural and probable consequences of his negligent act or omission. 45 C. J. 917. It may be said that a man may not escape the responsibility for his negligent acts or omissions by claiming not to have foreseen evil consequences, nor may it be said that a man must be responsible for everything that may have any connection with his negligent act or omission. If reasonable men would not differ respecting the view that the result complained of is a natural or probable consequence of the negligent act or omission, or if reasonable men might differ thereon, responsibility may attach despite the contention of the one charged that he did not anticipate or foresee such a result. On the other hand, a man will not be held responsible for a result of his negligent act unless it could likewise be said by reasonable men that he should have anticipated or foreseen the result.

With these rules as premises, we must say that the company is not liable in this action. It is virtually admitted, at least it was not denied, that the platform was so worn or rotted that it would not hold the pin and it was necessary to move the pin outward, and if we admit for the sake of the argument, knowledge, actual or constructive, by the company of this condition, we do not believe that reasonable men would differ in saying that such an incident as the one wherein Gilbert was hurt was not a natural or probable result that a reasonable man should have anticipated or foreseen. We think there is no causal connection between the condition of the platform and the injury.

It is proven that the iron pin was a free swinging instrument, and was capable of being stuck into the platform at many places within the circumscribed arc of its radius. If it is admitted, as mentioned above, that the worn or rotted condition of the platform necessitated the use of another spot in which to stick the pin, we do not believe any reasonable or prudent man would consider the change as creating an unusual or unreasonable or unduly dangerous condition.

It seems to us that if it can be asserted that the company was bound to anticipate

and foresee that an invitee would strike this bar with his foot, while climbing over the gate, and fall, it could with just as much reason and logic be asserted that the company should anticipate or foresee harm to some one by climbing over the gate at the point where the bar was accustomed to be. We anticipate that Gilbert may assert that the removal of the bar from its accustomed place deprives this analogy of its validity. If this is asserted, we think the argument and authorities presented by company's proposition No. 4 is an answer thereto.

To whatever extent a person is required to anticipate and foresee the natural and probable consequences of his negligence, he is not required to anticipate or foresee the results of the independent act of a third person. City of Okmulgee v. Hemphill, 183 Okla. 450, 83 P.2d 189; Lusk v. Pugh, 71 Okla. 182, 159 P. 855; Toombs v. Cummings, 151 Okla. 166, 3 P.2d 177, and other Oklahoma cases. See 45 C. J. 926, § 489, wherein it is said:

"* * * In other words, an intervening cause will not relieve from liability where the prior negligence was the efficient cause of the injury. The test is not to be found in the number of intervening events or agencies, but in their character and in the natural connection between the wrong done and the injurious consequences, and if the injury is the natural and probable consequence of the original negligent act or omission, and is such as might reasonably have been foreseen as probable, * * *, liability attaches."

Further, on pages 928-929, it is said:

"The law will not look back from the injurious consequences beyond the last efficient cause, especially where an intelligent and responsible human being has intervened." Pollard v. Oklahoma City Ry. Co., 36 Okla. 96, 128 P. 300; City of Okmulgee v. Hemphill, supra; Guthrie v. City of Henryetta, 177 Okla. 122, 57 P.2d 1165, and Toombs v. Cummings, 151 Okla. 166, 3 P.2d 177.

Taking as true the worn and rotted condition of the platform, the only result thereof, until Haynes intervened, was the gate failed to hold proper alignment. In other words, the pin went through the floor and prevented a stopping or bracing of the gate as desired. Now this did not cause the particular injury, for, according to Gilbert's theory, if the bar had been at its usual place, he could have touched the platform without hindrance. If the pin had been in the worn or rotted hole, permitted by the negligence of company, the particular injury could not have happened and obviously would not have been anticipated.

Haynes, a friend of Gilbert and a volunteer assistant and admittedly not connected with company, saw that the pin was not functioning and moved it without the knowledge or consent of anyone. If it be conceded for argument that the pin's presence at the point to which he moved it constituted an unusual or unduly dangerous condition, we cannot say that company would have moved it to the point if it had undertaken to repair the situation. It may have preferred the consequences of the harm likely to result from the use of the pin at its accustomed place rather than to move the pin to where Haynes did. For these reasons, we are of the opinion that even if there was primary negligence on the part of company, it was not the proximate cause of Gilbert's injury; but, rather, his injury resulted from the intervening act of a responsible human agency acting without the knowledge or consent of company.

Another argument of company is based upon the authority of Munroe v. Schoenfeld Hunter Drilling Co., 178 Okla. 149, 61 P.2d 1045. In that case an employee jumped from the end of a platform where there were no steps when there were other and safer means of descent. We held that whatever negligence existed because of the absence of steps at the point where he jumped, his election to jump was the proximate cause of the injury and not the mere existence of the condition. Here Gilbert admits there were several other means of egress and some of them safer than the particular one chosen. We do not inject the issue of assumption of the risk by virtue of his choice of places of egress; it goes further than that; it was an act on his part going into a place of danger, according to his evidence, unknown to him or the company. As seen heretofore, one of the elements of an owner's liability to an invitee is superior knowledge respecting the danger. Here the company had no actual knowledge of the danger into which he was going, and the danger involved in the location of the pin had not existed long enough to give constructive knowledge. It is obvious that there was no knowledge here of danger of which company could **warn him.**

The judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.

WELCH, V. C. J., and GIBSON, DAVISON, and DANNER, JJ., concur.