OKLAHOMA CITY-ADA-ATOKA RY. CO. v. CRABTREE.

No. 35137.    Sept. 23, 1952.

Rehearing Denied Oct. 28, 1952.

*249 P. 2d 445.*

James D. Gibson, Muskogee, and Walter Billingsley and Allen G. Nichols, Wewoka, for plaintiffs in error.

W. F. Smith and Wm. G. Smith, Oklahoma City, Homer H. Bishop, Seminole, and Horsley, Epton & Culp, Wewoka, for defendant in error.

HALLEY, V.C.J. I. W. Crabtree sued the Oklahoma City-Ada-Atoka Railway Company in the district court of Seminole county for personal injuries alleged to have been suffered by the plaintiff as a direct result of the negligence of defendant in furnishing a defective coal car loaded with lime, which it was the duty of plaintiff, his employer and coworkers to unload. Plaintiff recovered a judgment based upon a jury verdict in the sum of $29,377.70, and the defendant railroad has appealed.

The parties will be referred to as they appeared in the trial court.

The plaintiff was employed by H. C. Root, whose business since 1940 had been the unloading and spreading on farms of lime phosphate. This material was usually shipped in open coal or gravel cars. The height of the side-walls and ends of these cars was about 42 inches. The endgates were fastened at the bottom by a swivel device, so that they could be let down on the floor of the car. When the endgates were in an upright position to close the body of the car for hauling loose materials, they were fastened at the top by a latch connected with the side-walls of the car.

At about 4 o'clock on Saturday afternoon, July 6, 1946, the defendant delivered at its station in Konawa, Oklahoma, three cars loaded with lime and consigned to plaintiff's employer, H. C. Root. The agent of defendant noticed that the endgate of the middle car was leaning or lying on the load of lime. The agent testified that he did nothing about it, and left the station about 5 p.m., before plaintiff and the unloading crew of H. C. Root had arrived. There is ample testimony to support a finding that the agent was present when H. C. Root and his employees arrived and began to unload the north car, but it is admitted that the agent did nothing and made no suggestion on or gave any warning about the endgate that was down. The agent was not at the depot on Sunday, when the car with the defective endgate was reached for unloading.

H. C. Root attached to the side of the car what was called an "A-frame." At the peak of the frame was a pulley through which a rope or cable was passed to a slip or scraper, which was loaded with lime. The other end of the cable was attached to a tractor on the ground, which pulled forward to raise the loading slip over the side of the car to the truck being loaded. This device for unloading the cars belonged to plaintiff's employer, H. C. Root. Defendant's agent testified that had he been at the station when H. C. Root arrived, he would have delivered the cars to him, but would have warned him about the fallen or loose endgate.

On the Sunday mentioned, when the car with the defective endgate had been unloaded except for about two tons, it became necessary to raise the endgate in order to get at the lime on which it was resting. Robert Root and another worker got at each end, and plaintiff at the center, and raised the endgate to an upright position. At one end the latch to hold it in place was attached. At the other end the latch was old, worn, or battered. Some wire was there near the defective latch, apparently having been used to secure the endgate in position, and Root and the other worker undertook to fasten

the gate up with the wire. The plaintiff had no part in the latching or wiring of the endgate. His fellow-workers said that they thought it would hold when they had finished wiring it.

Plaintiff was shoveling lime with his back to the endgate when it came loose and fell against him, crushing both legs below the knees and crushing some of the bones in his feet. He suffered many months of pain and was left a cripple for life, unable to perform manual labor. The undisputed evidence is clear that he suffered many months of pain. He was 59 years of age, with a life expectancy of 13.74 years. He appeared to be a man of intelligence, but had only finished the third grade in school. He had been a laborer all of his life. He was making $8 per day for four or five days a week working with the lime, and on the other days of the week he earned a few dollars by doing farm work for H. C. Root.

The plaintiff and his fellow-workers were not railroad men, and he testified that he knew little or nothing about the mechanism of the car wherein he was hurt. They knew that the door was heavy, for they had lifted it. The evidence shows that it was of steel and weighed about 700 lbs.

Defendant contends that its admitted negligence in furnishing for unloading a defective car was not the proximate cause of plaintiff's injuries, but that his injuries were the result of an independent, intervening cause consisting of the negligence of plaintiff and his co-workers, all employees of H. C. Root, in uprighting and defectively fastening the endgate which fell and injured plaintiff. Robert Root testified that they thought the way they fastened the endgate was sufficient and that it would hold. It did remain upright for awhile. The most reasonable theory advanced for its falling was that the A-frame used for unloading jarred the sides of the car, causing a vibration, which wore through the wire securing the endgate. The proximate cause of plaintiff's injuries was the falling of the

endgate after the employees of H. C. Root had pushed it into place and made an effort to fasten it there. Their efforts proved insufficient. It is not disputed that it was the duty of the defendant to deliver a car safe for unloading. It failed in this duty, and had notice that the car being delivered for unloading had an endgate that had broken from its moorings and was lying forward in the load of lime when the car arrived in Konawa. Defendant's agent admitted the danger of such a situation, and that he observed it when the car was set off on the siding, but placed no warning thereon and made no suggestion about dealing with it to those about to undertake to unload the lime. He admitted that a loose endgate was dangerous on account of its weight.

Defendant cites the case of St. Louis-S.F. Ry. Co. v. Gilbert, 185 Okla. 591, 95 P. 2d 123, wherein it is said:

"To whatever extent a person is required to anticipate and foresee the natural and probable consequences of his negligence, he is not required to anticipate or foresee the results of the independent act of a third person. * * *"

And quoting from 45 C.J. 926, §489:

" 'The law will not look back from the injurious consequences beyond the last efficient cause, especially where an intelligent and responsible human being has intervened.' "

Defendant says that the defective car merely furnished a condition upon which plaintiff and his employer acted, and was at most a remote cause of the accident. It cites Norman v. Scrivner-Stevens Co., 201 Okla. 218, 204 P. 2d 277, wherein it is said:

"Generally it is held that negligence which only serves to furnish the opportunity for injury cannot be the proximate cause where injury occurs as a direct result of an intervening force. The law does not charge a person with all possible consequences of a wrongful act, but ignores remote causes and looks for the proximate cause of the injury. Upon the basis of repeated consideration the rule gradually evolved is

that where the negligence complained of only creates a condition, which thereafter is acted upon by a subsequent independent, unforeseeable, distinct agency and produces an injury, the original negligence is the remote rather than the proximate cause thereof. And this is true though injury would not have occurred except for the original act."

The plaintiff relies upon the case of Oklahoma City-Ada-Atoka Ry. Co. v. Riddle, 183 Okla. 318, 82 P. 2d 304, where a defective car door was attempted to be pried open for unloading after it had been nailed fast because the track upon which it operated had been sprung. The door fell and injured one of the workmen attempting to open it. In that opinion the court said, in part:

"* * * However, it had to be anticipated that this door would have to be opened, and that it would have to be pried open. The defendant set the chain of circumstances in motion, and, having done so, is not to be relieved on the grounds that there was an independent, intervening act."

In City of Altus v. Wise, 193 Okla. 288, 143 P. 2d 128, it was said:

"However, in order to relieve the one guilty of the first act of negligence of responsibility, the intervening cause must entirely supersede the original negligence. In other words, it must be independent of the original act and adequate of itself to bring about the injurious result. * * *

"* * * It is enough if it could have been reasonably expected that a cause would intervene in a way likely to produce an injury similar to that actually suffered."

In St. Louis-S. F. Ry. Co. v. Gilbert, supra, the court cited § 489, 45 C.J., 926, wherein it was said:

"* * * In other words, an intervening cause will not relieve from liability where the prior negligence was the efficient cause of the injury. The test is not to be found in the number of intervening events or agencies, but in their character and in the natural connection between the wrong done and the injurious consequences, and if the injury is the natural and probable consequence of the original negligent act or omission, and is such as might reasonably have been foreseen as probable, * * * liability attaches."

The announcement of this court in Oklahoma Natural Gas Co. v. Courtney, 182 Okla. 582, 79 P. 2d 235, is contrary to the contention of the defendant that the defective car was only a remote cause of the injury. It is said therein, in the third syllabus:

"Where there is an intervening, responsible agency, which directly produces the injury, as in this case, the question as to whether the original negligence is to be regarded as the proximate cause of the injury, or only as a condition or remote cause, is to be determined by ascertaining whether the agency which intervened was of such a character, and the circumstances under which it occurred were such, that it might have been reasonably expected that such agency or a similar one would intervene in such a way as to be likely to produce an injury similar to the one actually caused. If, under the circumstances, the intervention of such an agency in the manner stated might reasonably have been expected in the usual course of events, and according to common experience, then the chain of causation, extending from the original wrongful act to the injury, is not broken by the independent, intervening agency, and the original wrongful act will be treated as the proximate cause."

It appears to be the general rule in this state that where an act of negligence is not entirely superseded by a second cause, but continues, so that the injury is in fact the result of both causes, the one guilty of primary negligence is not relieved of liability by the intervening cause. In Oklahoma Gas & Electric Co. v. Butler, 190 Okla. 393, 124 P. 2d 397, it was said:

" 'Negligence, to render a person liable, need not be the sole cause of an injury. Where several causes combine to produce an injury a defendant is not

relieved from liability because he is responsible for only one of them. It is sufficient if his negligence is an efficient cause, without which the injury would not have resulted. Where several causes producing injury are concurrent and each is an efficient cause without which the injury would not have happened, the injury may be attributed to all or any of the causes.' Northrup v. Eakes, 72 Okla. 66, 178 P. 266."

In Powell v. Pacific Naval Air Base Contractors, 93 Cal. App. 2d 629, 209 P. 2d 631, it was said:

"* * * For the delivering carrier owes to consignees and to shippers, and to their employees, the duty of inspection of cars furnished, to determine whether such cars are safe to load and unload, and the duty to give to consignees and shippers warning of defective conditions in cars, discoverable by such inspection."

In that case the Supreme Court of California had under consideration facts almost identical with those in the case we are considering. A workman was injured by the falling of an endgate which had a defective latch. After the accident, the latch was found to be rusty and broken, and the endgate apparently had been held in place by wire. The jury returned a verdict for the plaintiff for $50,000, and on motion the court rendered judgment for the defendant in disregard of the jury's verdict. The appellate court reversed the judgment, with directions to enter judgment for the plaintiff for $50,000.

The question of intervening cause is a jury question where there is evidence sufficient to cause reasonable men to differ, as we think it was here, and the jury found that the intervening cause was reasonably foreseeable. It was only reasonable for the defendant to foresee that the endgate would have to be raised in order to unload the car, and the defendant knew of its defective condition. Robert Root was called as a witness by the defendant and testified that they used what the railroad had furnished in undertaking to fasten the door, and believed that it would hold.

We conclude that the intervening cause of the acts of H. C. Root and his employees did not relieve the defendant of liability for its negligence in furnishing a defective car for unloading. But for the defective endgate, the door would not have fallen. It is true that the endgate was harmless as it lay down upon the lime, but it is perfectly obvious that it had to be raised to unload the car, and the railroad should have anticipated such action by those undertaking to attempt to unload the lime.

The primary negligence of the defendant was of a continuing nature, and if it be admitted that the plaintiff and his employer were also negligent, then the intervening negligence of Root's employees cannot be said to completely break the causal connection between the negligence of defendant in furnishing a defective car and the negligence of third parties in failing to fasten the endgate securely. A Mr. Timbrook, a former car inspector, was called by the railroad and testified in regard to the dangerous condition of the endgate as follows:

"Q. You still haven't answered my question. You made a statement it (the endgate) was unsafe lying down on the lime. Why was it unsafe? A. Yes, sir, because it's defective.

"Q. Well, it can't hurt anybody lying down there, can it? A. No, but when the consumer comes to unload this car, he has to raise that door up to get his contents out from under it and if he's not familiar with cars, he's liable to get hurt."

As was said in City of Altus v. Wise, supra:

"However, in order to relieve the one guilty of the first act of negligence of responsibility, the intervening cause must entirely supersede the original negligence. In other words, it must be independent of the original act and adequate of itself to bring about the injurious result. Southwestern Light &

Power Co. v. Fowler, 119 Okla. 244, 249 P. 961; 38 Am. Jur. 723; Zipp's, Shearman & Redfield on Negligence, (Rev. Ed. §38). Consequently, where an act of negligence is not superseded, by a second cause, but continues to operate, so that the injury is the result of both causes acting in concert, each act may be regarded as the proximate cause thereof. 45 C. J. 920; 38 Am. Jur. 715; Zipp's, Shearman & Redfield on Negligence (Rev. Ed. §39.) And where separate and independent acts of negligence combine to produce an injury, each wrongdoer is responsible for the entire result. Northrup v. Eakes, 72 Okla. 66, 178 P. 266."

Defendant complains of instruction 14. There the court told the jury that it is the theory of defendant that the act of the plaintiff and his employer in tying up the endgate was an intervening circumstance or cause of plaintiff's injuries, and continued as follows:

"* * * In this connection, you are instructed that an intervening event which occurs so naturally in the course of events that it might reasonably have been anticipated, does not relieve the original wrongdoer of the consequences of his negligence, if any. * * *"

It will be noted that the jury is told that an intervening cause "which occurs so naturally" that it might have been reasonably anticipated, does not relieve the original wrongdoer of the consequences of his negligence, if any; that if the jury found that defendant was negligent in furnishing an unsafe car and might reasonably have anticipated that some other person would so use the car in the natural course of events as to cause the injury of someone rightfully in the car, then it should find for the plaintiff, unless the latter was guilty of contributory negligence or had assumed the risks of his employment.

Defendant says that the correct rule requires that the intervening event must not only be the "natural" but the "probable" result of the original negligent act, in order to fix liability on the original wrongdoer, and should have

been foreseen in the light of attending circumstances.

In St. Louis-S. F. Ry. Co. v. Gilbert, supra, it is stated that for an action to interrupt the original negligence three elements must be present: it must be (1) a natural result; (2) a probable result; and (3) a foreseeable result.

Does the part of the charge above quoted misstate the law wherein it authorizes a finding for the plaintiff? We do not think the omission of the word "probable" in connection with the word "natural" renders the instruction misleading. The latter term carries much the same meaning as the word "probable."

Instruction 15 is complained of because defendant insists that the plaintiff assumed the risks of his employment when he assisted in raising the endgate to its proper position, with no suggestion or help from the railroad employees. The instruction said:

"* * * but that such a person does not ordinarily assume the risks arising out of the negligence of another in failing to furnish him a reasonably safe place to work."

In Champlin Refining Company v. Huntington, 180 Okla. 280, 69 P. 2d 31, it is said:

"The risks the employee does not assume are those risks which would not have existed if the employer had properly performed his duty. No employee must be held to assume risks arising from the master's negligence."

Again, in Kansas City, M. & O. Ry. Co. v. Costa, 69 Okla. 132, 170 P. 892, cited by defendant, the latter part of the second syllabus is quoted by defendant:

"* * * and with reference to risks not naturally incident to the occupation, but which may arise out of the failure of the master to exercise due care in the performance of some duty owing by him to the servant, the rule is that the servant does not assume such risks

until he becomes aware of such negligence of the master and of the risks so arising therefrom, unless the defect and risk are so apparent and obvious that an ordinarily careful person would observe the one and appreciate the other."

In instructions 18, 19, and 23, the court instructed the jury and that if the danger was obvious the plaintiff assumed the risk, and the defendant was not liable.

Instruction 16 is as follows:

"Gentlemen of the jury, you are further instructed that there is a duty resting upon the receiving railroad company to inspect cars turned over to it by another company for delivery, and the negligent discharge of such duty makes the railroad so furnishing such a car liable for all damages approximately (sic) resulting therefrom.

"In this case the defendant was such receiving railroad and it owed such duty to the consignee of the car and to his employees. Therefore, if you find from a preponderance of the evidence that the defendant railroad company was negligent in failing to inspect the cars turned over by it to the consignee, and that the injury of the plaintiff, if any, was proximately caused by reason of the negligence of this defendant, if any, and if you further find that the plaintiff was not guilty of contributory negligence, or had not assumed the risk of his employment, then your verdict should be for the plaintiff."

It is contended that this instruction is similar to instruction 14, and that both overemphasize the theory that the defendant is liable because of its negligence in delivering a defective car. We do not think these instructions misled the jury when the instructions are considered as a whole. In the Kansas case of Folsom v. Lowden, 157 Kan. 328, 139 P. 2d 822, it is said:

"Appellee is the delivering carrier. The general rule is that a railway company, when it delivers a car of freight to a consignee to be unloaded, in the absence of notice to the consignee to the contrary, represents to the consignee, or his employee, that the car is in reasonably safe condition to be unloaded.

"The consignee or his employee is regarded as an invitee of the railway company for the purpose of unloading the car. The railway company, while not an insurer of the safety of the consignee or his employee while unloading the car, is negligent if it furnishes a car defective to the extent that the consignee or his employee, using due care, is likely to be injured as a result of such defect, and is liable if such injury results. This liability is not founded upon contract but upon negligence in furnishing a defective car, and the general rules relating to liability for negligence are, or may be, applicable."

Instruction 25 is complained of because it fails to contain an instruction on intervening cause and the assumption of risk. We think the defect complained of is met by instruction 8, wherein the jury is told that the negligence of defendant must be "the direct and proximate cause of the injuries."

The rule was clearly announced by this court in the Riddle case, supra, in the syllabus as follows:

"1. Trial court's instructions must be construed as a whole, and no instruction must contain all the law of the case; it is only necessary that they fairly present the law to be applied to the issues, and that the different instructions do not conflict.

"* * *

"4. In reviewing instructions to determine whether error was committed in granting or refusing of certain instructions, this court will consider the instructions as a whole, and if instructions given fairly present the issues to the jury, the cause will not be reversed because certain instructions, standing alone, may be subject to criticism."

In Johnson v. Short, 204 Okla. 656, 232 P. 2d 944, it is said:

"* * * It is not necessary that any particular paragraph of the instructions contain all the law of the case; it is sufficient, if, when taken together and

considered as a whole, they fairly present the law applicable to the issues in the pleadings upon which competent evidence has been introduced."

When we consider the instructions as a whole, we believe that they sufficiently instruct the jury as to the law upon the issues involved. We have concluded that the acts of the plaintiff, his employer and co-workers in undertaking to fasten the endgate in order to unload the car do not constitute such an intervening and independent cause as would relieve the defendant of liability for furnishing a defective car for unloading, and that the theory of assumed risk is not applicable to the facts surrounding the accident. We find that the instructions to the jury, when considered as a whole, fairly instruct the jury as to the law upon the issues involved.

Affirmed.

WELCH, CORN, DAVISON, JOHNSON, and O'NEAL, JJ., concur. GIBSON, and BINGAMAN, JJ., dissent.