372 So.2d 288 (1979)
D & W JONES, INC.
v.
Hampton COLLIER et al.
D & W JONES, INC.
v.
Wilbur COGGIN et al.
Nos. 51046, 51047.
Supreme Court of Mississippi.
June 6, 1979.
Rehearing Denied July 18, 1979.
Robertshaw & Merideth, H.L. Merideth, Jr., Greenville, for appellant.
Mansour & Thomas, Stephen L. Thomas, Greenville, Robert L. Crook, Ruleville, Satterfield, Allred & Colbert, Michael S. Allred, Jackson, Campbell & DeLong, Roy D. Campbell, Jr., Lake, Tindall, Hunger & Thackston, Frank W. Hunger, Greenville, Shell, Buford, Bufkin, Callicutt & Perry, Charles L. Howorth, Jr., Jackson, Taylor Webb, Leland, for appellees.
Before ROBERTSON, LEE and COFER, JJ.
LEE, Justice, for the Court:
D & W Jones, Inc., a farming corporation, operated approximately five hundred (500) acres of commercial catfish producing lands at two (2) locations in Washington County. It filed two suits in the Circuit Court of that county against several defendants for damages resulting from killing or contaminating fish in said ponds through the use of poisonous agricultural chemicals applied by farmers and their crop duster agents. The defendants filed affirmative defenses of misjoinder of parties and misjoinder of causes of action and the trial court sustained those defenses. Jones amended its declarations, the same pleas were filed and were sustained in each case, Jones declined to plead further and final orders were entered dismissing the suits. The cases were consolidated for appeal to this Court, the same question being applicable to each of them. They are referred to as (1) Murphy Road Farm and (2) Highway 12 Farm.
The sole assignment, and question, is that the trial court erred in sustaining the motions of appellees to dismiss appellant's suits due to misjoinder of parties and causes of action.

Murphy Road Farm (No. 51,046)
The Murphy Road Farm consists of approximately four hundred (400) acres divided into nine (9) separate catfish ponds [two *289 hundred forty (240) acres of water]. In 1974, the appellee, Jimmy Hollingsworth, was engaged in the agricultural production of cotton and soybeans on lands adjacent to and north and west of appellant's lands. The appellee, Hampton Collier, in 1974, produced cotton on lands adjacent to and east and south of appellant's lands. Each of those appellees applied agricultural poisons during the crop year 1974, by equipment that operated on the ground and was called a "ground rig," and by airplane referred to as "aerial application."
The appellee, Valley Flying Service, was a corporation engaged in the aerial application of agricultural poisons and, on at least one occasion, applied such poisons to the lands of appellee, Jimmy Hollingsworth. The appellee, H.W. Lowery, was an individual aerial applicator and, on at least one occasion, he applied by aerial application agricultural poisons to the lands of the appellee, Hampton Collier.
The catfish in appellant's ponds either were killed or contaminated to the extent that they could not be harvested, they had to be removed from the ponds, and the ponds could not be used for the year 1975.

Highway 12 Farm (No. 51,047)
The Highway 12 Farm consists of approximately one hundred (100) acres of water. The appellees, Wilbur and Vernon Coggin, in 1974, conducted a joint farming operation for the production of cotton and soybeans on lands located on the north side of Highway 12 and north and east of the appellant's catfish ponds. The appellees, Edward Nerren and Owen Nerren, farmed jointly as Nerren Brothers and produced cotton, soybeans and catfish on lands north of Highway 12 and generally northeasterly of appellant's lands and on the east side of Sunflower River in Humphreys County. The appellees, Melvin Pearson and Linda Pearson, in 1974, farmed lands both north and south of Highway 12 and northeast and east of appellant's catfish ponds, their lands being located on the east side of Sunflower River and in Humphreys County.
The appellee, Edmond Franklin Duke, was an aerial applicator, d/b/a Duke's Flying Service, and he made an aerial application of agricultural poisons to the lands of the abovementioned appellees. Also, each of said farmer appellees applied agricultural poisons to their lands on a number of occasions with ground rigs. The catfish in appellant's ponds either were killed or contaminated to the extent that they could not be harvested, they were removed from the ponds and the ponds could not be operated for the year 1975.
Were the appellees in each case jointly and severally liable for the appellant's damages?
The declarations charged, or proof on the defenses is undisputed, as follows:
(1) The farmer appellees in each case in the application of agricultural poisons in 1974 acted independent of each other in that they conducted and carried on separate farming operations over which the particular appellee exercised management control without regard to any other appellee (except the appellees farming together and conducting the same farming operation).
(2) Each of the appellees knew, or should have known, that the appellant was engaged in the commercial production of catfish in the ponds on its lands in 1974.
(3) Each of the appellees in each case made applications of the agricultural poison described as Toxaphene within an area of one-half (1/2) mile to one (1) mile of the appellant's catfish ponds.
(4) That Toxaphene is highly toxic and deadly to aquatic life and particularly fish.
(5) That Toxaphene either from primary drift or secondary drift would escape out of the target area up to a distance of one-half (1/2) mile to one (1) mile, depending on the wind velocity and the distance above the crop that the poison was released.
(6) That the direction of the prevailing winds and the velocity of the prevailing winds either from primary or secondary drift either did or probably did move quantities of agricultural poison applied by the various appellees over and into the appellant's catfish ponds.
*290 (7) That each of the appellees knew that Toxaphene was highly toxic and deadly to aquatic life and fish.
(8) That the appellant used no Toxaphene on its crops in 1974.
(9) Each of the appellees, from past experience as agricultural producers either knew, or should have known, that the other appellees were likewise applying agricultural poisons toxic to fish on their respective crops for all practical purposes adjacent to the appellant's catfish ponds (Hollingsworth and Collier) and, in any event, within a distance not exceeding a mile (Coggin, Nerren, Pearson).
(10) Each of the appellees knew, or should have known, of the primary and secondary drift characteristics of the agricultural poison being applied; and that their acts in so doing would join with like acts of the other appellees and produce a combined, collective, cumulative and continuing threat to the health and quality of the appellant's fish; that the appellees impliedly acted in concert for a common purpose and a common goal, in applying the economic poisons to their agricultural crops adjacent to or in close proximity to, appellant's catfish ponds.
(11) That the appellant sustained a loss on both farms in 1974 and loss of production in 1975 in the approximate amount of three hundred thousand dollars ($300,000), as a direct result of the combined Toxaphene applications by appellees.
Appellant contends that joint and several liability rested on each appellee in each case for an indivisible injury. Appellees claim that the injury to appellant is separable and subject to apportionment.
In Masonite Corporation v. Burnham, 164 Miss. 840, 146 So. 292 (1933), Burnham brought suit against Masonite for injuries resulting from pollution of Tallahala Creek by Masonite, which created a nuisance. It was shown without contradiction that both the City of Laurel and Masonite polluted the waters of the creek and that the City of Laurel had been doing so for a number of years prior to the acts of Masonite. The Court held that Masonite was responsible only for the portion of pollution caused by its plant, that Masonite and the City of Laurel were not joint tort-feasors, and cited cases from other jurisdictions as follows:
"Farley v. Crystal Coal & Coke Co., 85 W. Va. 595, 102 S.E. 265, 267, 9 A.L.R. 933, is to the same effect. In deciding this case, the Supreme Court of West Virginia overruled one of its former decisions (Day v. Louisville Coal & Coke Co., 60 W. Va. 27, 53 S.E. 776, 10 L.R.A.(N.S.) 167), and in overruling it said that there had been a failure on the part of the court to observe and apply a well-defined and firmly grounded exception to the rule of liability of joint tort-feasors; that this exception or limitation was that there is no joint liability, nor liability for the entire damages when the tort-feasors `act independently, without concert, collusion, or common design, and the injury to the plaintiff is consequential only, or remotely resulting, as contradistinguished from direct and immediate.' The court said further that the overwhelming weight of authority stood against the decision in Day v. Louisville Coal & Coke Co.

In Symmes v. Prairie Pebble Phosphate Co., 66 Fla. 27, 63 So. 1, 3, in discussing this question, the court said: `A joint tort is essential to the maintenance of a joint action for damages therefor against several parties. For separate and distinct wrongs in no wise connected by the ligament of a common purpose, actual or implied by law, the wrongdoers are liable only in separate actions and not jointly in the same action. * * * Torts that are several, separate, and independent acts when committed do not become joint by the subsequent union or intermingling of their consequences where no concert of tortious action or consequence is intended by the parties or implied by law. An implied concert of action between tort-feasors may grow out of the status or relation of the parties and the conditions under which the tortious acts proximately cause an actionable injury." 164 Miss. at 854-855, 146 So.2d at 295.
*291 Previous to Burnham, this Court decided the case of Westerfield v. Shell Petroleum Corporation, 161 Miss. 833, 138 So. 561 (1932). In Westerfield, the plaintiff was riding as a passenger in an automobile which was involved in a collision with a truck owned and operated by Shell Petroleum Corporation. The Court held that a cause of action existed against both drivers for plaintiff's injuries and stated:
"Such a state of facts would simply mean that appellee and the driver of the Shell car were joint tort-feasors, and each would be jointly and severally liable for the tort. In other words, if appellant's injury was caused by the conjoint negligence of appellee and the driver of the Shell car, neither would be relieved from liability, and the liability would be joint and several. Joint tort-feasors are both jointly and severally liable, and may be proceeded against singly, jointly, or individually, or all combined. Bailey v. Delta Elec. Light Co., 86 Miss. 634, 38 So. 354; Sawmill Construction Co. v. Bright, 116 Miss. 491, 77 So. 316; Waterman-Fouke Lumber Co. v. Miles, 135 Miss. 146, 99 So. 759; Oliver v. Miles, 144 Miss. 852, 110 So. 666, 5 A.L.R. 357. And this is true, although there was no common duty, common design, or concert of action between the joint tort-feasors. Nelson v. I.C.R. Co., 98 Miss. 295, 53 So. 619, 31 L.R.A.(N.S.) 689.
Under the law it is not necessary that the negligence of the operator of an automobile shall be the sole cause of the injury, in order to make him liable therefor. It is sufficient that his negligence, concurring with some other sufficient cause or causes, proximately caused the injury. 42 C.J., sec. 589, page 887." (Emphasis added) 161 Miss. at 838, 138 So. at 562.
In Burnham, the Court referred to Westerfield and attempted to distinguish it thusly:
"In Westerfield v. Shell Petroleum Corp., et al., 161 Miss. 883, 138 So. 561, 562, the court used this language: `Joint tort-feasors are both jointly and severally liable, and may be proceeded against singly, jointly, or individually, or all combined. * * * And this is true, although there was no common duty, common design, or concert of action between the joint tort-feasors.' That was an action for a personal tort; the defendants were Mrs. Harrison and the Shell Petroleum Corporation; the plaintiff was Mrs. Westerfield. There was a nonsuit taken against the Shell Petroleum Corporation. The evidence tended to show that both the Shell Petroleum Corporation and Mrs. Harrison contributed to the tort. The court held that they were both joint tort-feasors and jointly and severally liable. The evidence tended to show in that case, however, that there was concert of action between the joint tort-feasors, not by agreement, it is true; each joint tort-feasor was fully aware of the negligence of the other, and proceeded then and there to contribute to the injury; they acted jointly although without agreement." (Emphasis added). 164 Miss. at 857, 146 So. at 295-296.
The difference, according to Burnham, was the fact that Westerfield was an action for personal tort and that there was an implied concert of action. We see no real difference between damages for a tort involving injury to the person and a tort involving injury to property.
It is argued that there can be no joint tort-feasors unless there is concert of action on the part of the tort-feasors. If this be strictly true, the term "joint tort-feasors" has been loosely used through the years. In Granquist v. Crystal Springs Lumber Co., 190 Miss. 572, 1 So.2d 216 (1941), cited by appellees, the Court discussed the difference between liability of joint tort-feasors and liability of master and servant under the doctrine of respondeat superior, and with reference to joint tort-feasors stated:
"The term `joint tort feasors' means that two or more persons are the joint participants or joint actors, either by omission or commission, in the wrongful production of an injury to a third person. There the act or omission of each is his own act or omission, but the acts or omissions *292 are concurrent in, or contribute to, the production of the wrongful injury, so that each actor is, on his own account, liable for the resulting damages." 190 Miss. at 581, 1 So.2d at 218.
The Court made the following statement in defining joint and several liability in its relation to the wrong committed and the resulting injury, as well as to the parties, in Hutto v. Kremer, 222 Miss. 374, 76 So.2d 204 (1954):
"The legal principle applicable to the facts of this case is stated at Section 85 of Cooley on Torts (4th Ed.) as follows: `All who actively participate in any manner in the commission of a tort, or who command, direct, advise, encourage, aid or abet its commission, are jointly and severally liable therefor.'" 222 Miss. at 383, 76 So.2d at 208.
The decisions of various jurisdictions conflict on the common law requirement of concerted action in cases of joint tort-feasors. In 74 Am.Jur.2d Torts § 62, at 671-672 (1974), the more modern rule relaxing the common law requirement is stated as follows:
"Modern authority is generally in favor of the principle that joint, or more precisely, joint and several, liability may exist notwithstanding the absence of concerted action on the part of wrongdoers. Where the concurrent or successive negligent acts or omissions of two or more persons, although acting independently of each other, are, in combination, the direct and proximate cause of a single injury to a third person, and it is impossible to determine in what proportion each contributed to the injury, either is said to be responsible for the whole injury, even though his act alone might not have caused the entire injury, or the same damage might have resulted from the act of the other tortfeasor, and the injured person may at his option or election institute suit for the resulting damages against any one or more of such tort-feasors separately, or against any number or all of them jointly.
The general rule has frequently been stated thus: Where the independent tortious acts of two or more persons supplement one another and concur in contributing to and producing a single indivisible injury, such persons are in legal contemplation regarded as joint tortfeasors, notwithstanding the absence of concerted action. This rule has been regarded as applicable where the acts are concurrent as to place and time and unite in setting in operation a single destructive and dangerous force which produces the injury, and even where the acts are separate and distinct as to place and time, but culminate in producing a public nuisance which injures the person or property of another. The rule is especially applicable where the injury would not have occurred, except for the concurrence of the several wrongful acts, but the fact that the wrong of each person independently of that of the others would have caused some damage has in some cases been regarded as insufficient to preclude the imposition of joint and several liability."
Those jurisdictions which hold that concerted action is unnecessary for joint and several liability have taken the position that where a single indivisible injury occurs through the negligent actions of two or more tort-feasors, each is considered the proximate or contributing proximate cause of the entire result and is therefore liable.
86 C.J.S. Torts § 35, at 951-952 (1954) states the rule as follows:
"As applicable to the entire range of tort actions, the proposition may be stated that, where wrongdoers have not acted in concert, and separate and distinct injuries are caused by the act or neglect of each, the liability is several only, and each is liable only for the damage caused by his own tort. The fact that it is difficult to separate the injury done by each from that done by the others furnishes no reason for holding that one tort-feasor should be liable for the acts of others with whom he is not acting in concert. The fact that several independent tort-feasors obey a decree entered against *293 them in a prior injunction suit does not render them joint tort-feasors in a subsequent action for damages.

Single, indivisible injury. While there is language in some decisions to the effect that concert of action is necessary, at least in the case of willful torts, as a general rule where the separate and independent acts of several tort-feasors, especially where such acts are negligent, combine to produce directly a single injury, each is responsible for the entire result, even though his act alone, without the concurrence of the other tort, would not have caused the injury; and it is not necessary that they be acting together or in concert if their concurring torts occasion the injury. Where the independent tortious acts of two persons combine to produce an injury, each tort-feasor is liable for the entire damage, not on the ground that he is liable for the other tort-feasor's act, but because his own act is regarded as the proximate cause of the entire injury. The rule does not apply, however, where the independent act of one party does not contribute to the injury."
In Northup v. Eakes, 72 Okl. 66, 178 P. 266 (1919), a single action was filed against multiple defendants alleging joint and several liability in connection with the discharging of flammable substances into a stream. They ignited and destroyed improvements on the plaintiff's property. The Oklahoma Court stated the controlling principle of law as follows:
"`Where, although concert is lacking, the separate and independent acts or negligence of several combine to produce directly a single injury, each is responsible for the entire result, even though his act or neglect alone might not have caused it. It has been said that "to make tort-feasors liable jointly there must be some sort of community in the wrongdoing, and the injury must be in some way due to their joint work, but it is not necessary that they be acting together and in concert if their concurring negligence occasions the injury."'
* * * * * *
... [I]t is clear that while the lessees holding separate leases acted independent of each other, yet their several acts in permitting the oil to flow into the stream combined to produce but a single injury. In these circumstances, each is responsible for the entire result, even though his act or neglect alone might not have caused it." 178 P. at 268.
Landers v. East Texas Salt Water Disposal Co., 151 Tex. 251, 248 S.W.2d 731 (1952), involved joint and several liability of defendants acting independently of each other (agricultural poisons were not used). The trial court sustained a motion for misjoinder of parties and causes of action, and, on appeal, the Texas Court, in facing the problem of requiring "concert of action" before applying joint and several liability, said:
"[O]ur Courts seem to have embraced the philosophy, inherent in this class of decisions, that it is better that the injured party lose all of his damages than any of several wrongdoers should pay more of the damages than he individually and separately caused. If such has been the law, from the standpoint of justice, it should not have been; if it is the law now, it will not be hereafter." 248 S.W.2d at 734.
In Burnham, the action was for damages resulting from a nuisance created by the pollution of Tallahala Creek. The Court distinguished that case from Westerfield by stating that the latter action was for a personal tort and that there was implied concert of action on the part of the defendant drivers, even though they were approaching from different directions and had no previous contact. In the present case, the damage and injury to appellant's property was a gradual process over a period of several weeks. Five (5.0) parts per million Toxaphene would contaminate the fish and render them unusable. Probably (trial on the merits may indicate) the application of the poison by any one appellee would not have been sufficient to contaminate the fish, but the combined applications of two, three, or more appellees were sufficient to *294 cause the resulting damage. The appellees knew, or by the exercise of reasonable care should have known, of appellant's catfish operations, the toxic effect of the application of agricultural poison on the fish and that all the appellees were, or had been, making the applications of poison. Following the rule announced in Burnham and Westerfield, those facts constitute an implied concert of action which resulted in pollution of the ponds, contamination of the catfish and damage to appellant.
Turning to the modern trend where joint and several liability may exist, notwithstanding lack of concerted action on the part of the tort-feasors, and enlarging upon the principle stated in Westerfield v. Shell Petroleum Corporation, supra, we hold that the separate, concurrent and successive negligent acts of the appellees which combined to proximately produce the single, indivisible injury to appellant's property (pollution of its ponds and contamination of its catfish) rendered appellees jointly and severally liable.
We are of the opinion that the trial court erroneously sustained the pleas of misjoinder of parties and causes of action and that the cases should be reversed and remanded for trials upon the merits.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.