# Oswalt *v.* Smith.

| 97  | 627 |
| 101 | 537 |

## *Trespass for Cutting Timber on Land.*

1. *Direct force as an element of trespass a question for the jury.*—When the owner of land sells the timber on it up to a certain line to be pointed out by another party, and the latter points out timber on adjoining lands belonging to plaintiff, which is cut by the buyer, the jury should be allowed to determine in action of trespass against

[Oswalt v. Smith.]

the seller whether he simply expressed an opinion that the person designated could point out the true line, or that the buyer could cut timber up to the line pointed out by such person. (STONE, C. J., dissenting.)

APPEAL from Macon Circuit Court.

Tried before Hon. J. R. DOWDELL.

M. A. Oswalt brought an action of trespass against L. D. Smith, for cutting and carrying away timber on lands of plaintiff. On the trial, the court gave the general affirmative charge for the defendant.

W. F. FOSTER, for appellant, cited Add. on Torts, §§ 97, 18, 36, 422; *Clay v. Tel. Co.*, 11 So. Rep. 658; *Allison v. Little*, 85 Ala. 512; *Ullman v. Myrick*, 93 Ala. 532.

BREWER & BREWER, and RAY RUSHTON, for appellee.

STONE, C. J.—The present suit is an action for alleged trespass on land, and cutting and removing trees therefrom. The lands of the plaintiff and defendant were contiguous, separated only by a government-survey line extending east and west, but not clearly marked or established. The facts were simple, and are undisputed.

One Copeland was engaged in the business of manufacturing timber into staves. On the adjoining lands of the two parties to this suit was a body of land, on which was standing timber adapted to the business of stave-making. Smith contracted with Copeland to sell to him, at an agreed price per tree, all the timber on his land that was suited to the business. In making the contract, Smith informed Copeland "that he did not know where the lines of the land ran, but that one J. F. Chesson did know the line between his and Mrs. Oswalt's land; that he could get Chesson to point out the line to him, and that he could take the trees up to the line that Chesson would point out." Chesson did point out to Copeland what he represented as the dividing line, and Coleman cut and used timber up to that line. He, Copeland, paid Smith the agreed price for all the trees he so cut and used.

It is not claimed or pretended that Smith knew where the true dividing line ran, or that he was guilty of intentional misrepresentation when he represented that Chesson could point out the true line. Nor is it proved or claimed that when Copeland paid him for the trees, he, Smith, knew that any of them had been cut from Mrs. Oswalt's land. The only charge made against Smith is that he referred Copeland

[Oswalt v. Smith.]

to Chesson for information as to the true dividing line, and that Chesson, through mistake, or otherwise, located the line at the wrong place. The most that can be predicated of what he said to Copeland is, that he made a mistake—an innocent mistake, so far as we can perceive—when he said if he, Copeland, would call on Chesson, the latter could point out the true line. Nor is it denied, so far as this record informs us, that Chesson failed to point out the true dividing line; that Copeland, acting on his information, cut and removed some seventy trees from Mrs. Oswalt's land, and paid Smith the agreed price for the trees so cut and removed. The question is, will trespass *quare clausum fregit* lie on these plain, undisputed facts?

In *Pruitt v. Ellington*, 59 Ala. 454, the distinction between trespass and case was clearly drawn by BRICKELL, C. J. It was there said, "for a tort committed with force and intentionally, the immediate consequence of which is injury, trespass is the appropriate remedy. If the injury proceeds from mere negligence, or is not the immediate consequence of the tort, case is the appropriate remedy. . . . Each count of the complaint is in trespass, averring an intentional and forcible injury. Evidence of an injury resulting from the negligence of the defendant in permitting his stock to run at large, though he may have known of their propensity to break the plaintiff's inclosures and trespass on his growing crops, would not authorize a recovery."

In 2 Addison on Torts, § 1311, it is said, "To make a man a trespasser by relation from having ratified and adopted an act of trespass done in his name, and for his benefit, it must be shown that the act was ratified and adopted by him with full knowledge of its being a trespass, or of its being tortious, or, it must be shown that in ratifying and taking the benefit of the act he meant to take upon himself, without injury, the risk of any irregularity that might have been committed, and adopt the transaction right or wrong." See, also, 6 Wait's Ac. & Def. 44 *et seq.; Ib.* 48.

I am clearly convinced that on the undisputed facts in this case, trespass *quare clausum fregit* will not lie against Smith, however it may have been maintainable against Copeland. If Mrs. Oswalt has a remedy against Smith—and it would seem she must have—should she not sue for money had and received, or, perhaps, in an action on the case? My own opinion is, that the Circuit Court committed no error in giving the general charge.

The majority of the court hold, however, that if Smith informed Copeland that Chesson knew where the true divid-

ing line was, and that he, Copeland, could cut timber up to the line Chesson might point out, he thereby constituted Chesson his agent for that purpose, and would render himself liable in an action of trespass *quare clausum fregit* for any trees that might be cut from plaintiff's land, if within the area so erroneously pointed out. Under their opinion the general charge was improper. The question, whether Smith instructed Copeland that he could cut the trees up to the line to be pointed out by Chesson, or simply gave his opinion that the latter could point out the true line, was one for the jury, under proper instructions. The burden of proof on this issue was on plaintiff.

Reversed and remanded.

STONE, C. J., dissenting.