Hutto *v.* Kremer.

No. 39354 December 6, 1954 76 So. 2d 204

*Jo Drake Arrington,* Gulfport, for appellant.

*Ebb J. Ford, Jr.,* Gulfport, for appellee.

KYLE, J.

A. E. Kremer, as plaintiff, recovered a judgment in the Circuit Court of Harrison County against A. C. Hutto and A. Brooks, defendants, in an action for damages and the statutory penalty for the wrongful cutting of timber on the plaintiff's land; and from that judgment Hutto prosecutes this appeal.

The plaintiff's declaration was filed on December 26, 1952, against A. C. Hutto, A. Brooks, A. B. Kynes and Crosby Forest Products Company, Incorporated, as defendants; and the case was tried at the October 1953 term of the court. Many of the material facts in the case were not disputed.

The proof showed that Kremer was the owner of the 40-acre tract of land in the Handsboro area of Harrison County described as the Southeast Quarter of the North-

east Quarter of Section 30, Township 7, Range 10 West, which was well wooded with pine timber. Kremer had acquired title to the land in 1947 and had been in possession of same since that time. A. C. Hutto, during the month of November 1951 purchased from Mrs. Amanda Robbins the timber on a 23-acre tract of land in the West Half of the Northwest Quarter of Section 29, Township 7, Range 10 West, lying immediately east of Kremer's 40-acre tract; and on December 10, 1951, Hutto conveyed the timber on the 23-acre tract to A. Brooks for the sum of $3,850. In the timber deed which Hutto executed to Brooks the land was described as, "That part of the W½ of the NW¼ of Section 29, Township 7, Range 10 West, Harrison County, lying south of Bayou Bernard, and described as being bounded North by Bayou Bernard, South by road, West by section line and East by Coleman, and comprising 23.23 acres, more or less." The section line between sections 29 and 30 constituted the dividing line between Kremer's land and the above mentioned 23-acre tract.

A few days after receiving his timber deed Brooks entered upon the land with other workmen and began cutting the timber. Brooks started his timber cutting operations on the east side of the 23-acre tract, but later moved over toward the west side, where he continued to cut timber until Mrs. Coleman, whose land adjoined the 23-acre tract on the east, told him that the timber that he was cutting was not on the Robbins' land. When Brooks learned that he was over the line, he stopped cutting the timber immediately.

Kremer discovered during the month of January that Brooks had cut timber on his 40-acre tract. Kremer went to the scene of the cutting and found that 209 trees had been cut, of which 130 were more than twelve inches in diameter. There were 87 logs or poles lying on the ground. The bark had been peeled off. Kremer talked

to Brooks about the matter, and Brooks admitted that he had cut the timber, but claimed that it had been cut by mistake.

During the trial Brooks was called to testify as an adverse witness for the plaintiff. Brooks testified that he learned from J. J. Whitten that Hutto had the tract of timber for sale; and after Brooks had inspected the timber with Whitten he called upon Hutto to find out something more about the boundary line of the 23-acre tract. Hutto and Brooks drove out to Handsboro to look at the lines. Whitten and J. O. Dawkins, who appears to have been an employee in Hutto's office, accompanied them on the trip. Brooks stated that the parties drove northwardly beyond the Pass Road toward Bayou Bernard, and when they reached the point where the road turned eastwardly Hutto said, "This is the section line going on to the north." They then proceeded eastwardly along the public road, which constituted the south boundary of the property, to Mrs. Coleman's land. Hutto talked to Mrs. Coleman about an old fence which appeared to be a boundary line fence for the Coleman land, and Mrs. Coleman told him that the fence had always been used as a line fence. Brooks testified that he was satisfied with the lines pointed out to him; that he had made arrangements to borrow the sum of $3,850 from the Bank of Picayune for the payment of the purchase price of the timber; that Hutto gave Whitten the timber deed, which was to be delivered when the bank issued its check for the $3,850; and that he and Whitten then drove to Picayune to get the check which the bank had made payable to Hutto. Brooks stated that he then proceeded to cut the timber and dispose of same as orders were received. Some of the logs were sold and delivered to Crosby Forest Products Company. Other logs or poles were sold and delivered to the American Creosote Works.

Brooks stated that after Mrs. Coleman told him that he was cutting timber on Kremer's side of the section line he requested Whitten to bring Mr. Hutto back out there; and that "Mr. Hutto went back up there and I showed him where she said the old line was — the old section line. * * * But Mr. Hutto still said it was to the West."

Hutto testified that he had sold the timber on the 23-acre tract to Brooks for the sum of $3,850; and he admitted that he had made a trip to Handsboro with Brooks and had talked to Mrs. Coleman about the east line of the 23-acre tract. But Hutto denied that he had ever undertaken to point out the boundary lines of the 23-acre tract to Brooks. Hutto stated that he had gone with Brooks to the courthouse on two occasions for the purpose of examining the map of the lands in that area and had shown the map to Brooks. He stated that he did not point out the section line as being on Pine Street, as Brooks had testified that he did. Hutto also stated, however, that on the occasion of his second trip to the courthouse with Brooks, he told Brooks this: "that I was thinking the street you go out there on was on the section line, see, but I says, 'This map that we're looking at now does not show any street on that line.' "

At the conclusion of all of the evidence the plaintiff took a voluntary nonsuit as to the defendants A. B. Kynes and Crosby Forest Products Company. The court gave a peremptory instruction directing the jury to return a verdict for the plaintiff against the defendant Brooks, and the case was submitted to the jury on the question of liability of the defendant Hutto for the actual damages alleged to have been sustained by the plaintiff as a result of the wrongful cutting of the timber. The court refused to grant the peremptory instruction requested by the defendant Hutto; but the court instructed the jury that neither Brooks nor Hutto was liable for the statutory penalty sued for in the plaintiff's declaration. The jury under the instructions given returned a verdict for the plaintiff against both defend-

ants for the sum of $1,800; and a judgment was entered for that amount. Hutto filed a motion for a new trial, alleging newly discovered evidence as one of the grounds for said motion. After a hearing on the motion, the court ordered a remittitur of $200, thereby reducing the judgment to $1,600, and overruled the motion for a new trial.

From that judgment Hutto alone prosecutes this appeal.

The first point argued by the appellant's attorney as ground for reversal of the judgment of the lower court is that the court erred in refusing to grant the appellant's request for a directed verdict. The appellant contends that the timber deed which he executed to Brooks conveyed only the timber on the 23-acre tract of land in Section 29; that the timber wrongfully cut by Brooks on the appellee's land was not within the calls of that deed; and that the appellant cannot be held legally liable as a joint tortfeasor for a trespass which he had no part in committing.

But we think there was no error in the action of the trial judge in refusing to grant the appellant's request for a directed verdict.

It is undoubtedly true that as a general rule a seller of timber will not be liable for trespasses by the purchaser in taking timber not within the terms of the sale. 34 Am. Jur. 566, Logs and Timber, par. 116; Anno. 127 A. L. R. 1018.

But, according to Brooks' testimony, the appellant went with him to the land upon which the timber was located and pointed out to him as the section line, which constituted the west boundary of the 23-acre tract, a line running north from the corner of Pine Street, which was 686 feet west of the true line as later established by a survey made by Kremer. If Brooks' testimony is to be accepted as true, and the jury accepted Brooks' testimony as true, when the appellant assumed to point out to Brooks the above mentioned line as the dividing

line between himself and his neighbor, he made himself a party to the trespass committed by Brooks in cutting the trees on the adjoining land.

 It may be true that the appellant had nothing to do with the manual cutting and removal of the timber from Kremer's land; but that did not relieve the appellant from liability for his part in the commission of the trespass if he went upon the land and pointed out the boundaries of the tract of timber which he was selling so as to include a part of Kremer's 40-acre tract.

"One who assumes to sell timber on another's land may be liable to the true owner for trespass by the purchaser in cutting the timber, especially where he points out the exact trees cut; even though the seller, due to a surveyor's mistake, believed himself to be the owner of the land." 34 Am. Jur. 566, Logs and Timber, par. 116. See also Oswalt v. Smith (1893), 97 Ala. 627, 12 So. 604; Kolb v. Bankhead (1856), 18 Tex. 228; McCloskey et al. v. Powell et al., 123 Pa. 62, 16 A. 420, 10 Am. St. Rep. 512.

In the case of Oswalt v. Smith, supra, the Court held that, if a landowner points out to a person to whom he has sold the timber on his land the dividing line between himself and his neighbors, and he points out a line which is over on his neighbor's land, he is responsible to his neighbor for the trespass if trees are cut on his neighbor's land.

The rule stated above finds support in the two very recent cases of Castleberry v. Mack et al. (1943), (Ark.), 167 S. W. 2d 489; and Hambright v. Walker (1947), 211 S. C. 201, 44 S. E. 2d 310.

In the case of Crisler v. Ott, 72 Miss. 166, 16 So. 416, our own Court held that one negligently failing to acquaint himself with the real boundary line of his own land, who employs another, though an independent contractor, to cut trees near the line on land which he points out as his own, but which trees turn out to be beyond

the line and on the land of a third person, is a negligent cotrespasser, and liable for the statutory penalty for cutting such trees.

In Odom v. Luehr, et al., 213 Miss. 782, 57 So. 2d 867, the Court held that a party who sells timber, knowing its location and that he has no title thereto, and who is aware that the purchaser intends to cut the timber in pursuance of his purchase, and who, nevertheless, asserts good title in himself and directs the purchaser where to cut, is a joint actor and principal in the trespass of cutting the timber by the purchaser when cut where he was directed to cut it. See also Pippin v. Sims, 211 Miss. 194, 51 So. 2d 272.

 The legal principle applicable to the facts of this case is stated at Section 85 of Cooley on Torts (4th Ed.) as follows: "All who actively participate in any manner in the commission of a tort, or who command, direct, advise, encourage, aid or abet its commission, are jointly and severally liable therefor."

 It was of course an actionable wrong for Brooks to cut Kremer's timber without authority from him to do so; and if the appellant induced that action by a misrepresentation of the location of the west boundary line of the 23-acre tract, even though that misrepresentation may not have been made with the intention to mislead, the appellant became a joint tort-feasor, and was liable for the damage done. The jury by their verdict have found that the appellant was liable because of the misdirection given by him to Brooks as to the location of the boundary line of the 23-acre tract on which Hutto's timber was situated. The issue, we think, was properly submitted to the jury, and there was no error in the action of the trial judge in refusing to grant the peremptory instruction requested by the appellant.

It is next contended by the appellant's attorney that the appellee's instructions were insufficient to furnish the jury a proper guide as to the law of the case. But we find no error in the instructions granted by the court

to the plaintiff, and the deficiency complained of was made up in part at least by the instructions granted to the defendant, which clearly stated the law applicable to the case.

■■■ Finally, it is argued on behalf of the appellant that the court erred in overruling the appellant's motion to set aside the verdict of the jury and grant a new trial on the ground of newly discovered evidence.

The jury returned its verdict on October 20, 1953. The appellant filed his motion for a new trial on October 28. In his motion the appellant alleged that he had discovered since the trial that J. J. Whitten, who was said to have been present when the appellant undertook to point out the boundary lines of the 23-acre tract of land to Brooks, was hired by Brooks and paid by him, and that Whitten was acting for Brooks in the purchase of the timber; that Whitten told Brooks that neither he nor Hutto knew the correct lines and that it would be necessary to survey the land; that A. B. Kynes and one Ben Lee were actually sent down to survey the land for Brooks and the Forest Products Company, and that they later stated to Whitten that they had surveyed the land and cruised the timber; and that the only trip the defendant Hutto made out to the tract of land with Whitten and Brooks was to see about the east line. The appellant also alleged in his motion that he expected to prove the above stated facts by the testimony of Mrs. Nancy Whitten, the widow of the said J. J. Whitten, who had died several weeks before the trial.

The hearing on the motion took place on October 31. Mrs. Nancy Whitten did not appear to testify as a witness during the hearing; and no affidavit of Mrs. Whitten was produced to show what her testimony would be if a new trial were granted. The only evidence offered in support of the motion was the testimony of the appellant and Mrs. Whitten's sister, Mrs. Minnie Sarah Polk. The appellant testified that he had a conversation with Mrs. Whitten the day after the trial, in which she stated

to him the facts which he expected to prove by her and in which she indicated her willingness to testify to those facts. The appellant stated that after talking to Mrs. Whitten he had an affidavit prepared which he intended to have her sign, but he learned later that she had gone to New Orleans. Mrs. Whitten's sister testified that Mrs. Whitten had been called to the bedside of her aunt in New Orleans on Monday or Tuesday before the date of the hearing on the motion, and for that reason was unable to be present and testify as a witness.

We think there was no reversible error in the action of the trial judge in overruling the motion for a new trial on the ground of the alleged newly discovered evidence. A party asking for a new trial on the ground of newly discovered evidence must satisfy the court that the evidence has come to his knowledge since the trial, and that it was not owing to a want of diligence on his part that it was not discovered sooner; and he must go further and show that the new evidence would probably produce a different result if a new trial were granted. Redmond v. Marshall, 162 Miss. 359, 137 So. 733, and cases cited. To justify the granting of a new trial, the newly discovered evidence must be material to the issue, and not merely cumulative or impeaching. 39 Am. Jur., p. 165, New Trial, par. 158. It is not enough to show "from information" what a particular individual will testify, or that such individual has assured the party that if a new trial should be granted he would testify to the facts alleged in the motion. The affidavit of the witness from whom the evidence is to come must be produced, or it must be shown that such affidavit could not be obtained. Hare v. Sproul, 2 How. (Miss.), 772; Rulon v. Lintol's Heirs, 2 How. (Miss.), 891; Tatum v. Tate et al., 77 Miss. 684, 27 So. 647; Gavigan v. State, 55 Miss. 533.

It does not appear in the case that we have here that the appellant exercised due diligence to procure the affidavit of Mrs. Whitten after he had learned that she was

in New Orleans. Mrs. Whitten's affidavit might have; been obtained within a few hours; yet it seems that no effort was made to get in touch with her in New Orleans for the purpose of obtaining such affidavit. The appellant made no request for a postponement of the hearing in order that he might have time to get the affidavit, and he did not ask for a continuance of the hearing until the next term of the court.

But if Mrs. Whitten had signed the affidavit which had been prepared for her signature, it does not appear from the record that her testimony would have been of such probative value as to justify the granting of a new trial. The important factual issue that the jury had to decide was whether the appellant, negligently failing to acquaint himself with the real boundary line of the 23-acre tract of timber that he owned, pointed out to Brooks as the dividing line between himself and Kremer a line located several hundred feet west of the true line, thereby representing to Brooks and inducing Brooks to believe that the strip of land on which the trespasses were committed constituted a part of the 23-acre tract described in his timber deed. And on that issue it does not appear that Mrs. Whitten's testimony would have been of any material value. Brooks acted for himself in the purchase of the timber from the appellant; and it is not claimed that Mrs. Whitten was present during any of the discussions that Brooks had with the appellant concerning the boundary lines of the 23-acre tract. Neither does it appear that Mrs. Whitten accompanied Brooks, Hutto, Whitten, Lee and Dawkins on the trip that they made to Handsboro before the deed was delivered for the purpose of inspecting the boundary lines. Whether Brooks paid Whitten for his services in helping him negotiate the purchase of the timber from the appellant was not a matter of material importance. And the fact that Whitten may have told Brooks that neither he nor Hutto knew the correct lines of the 23-acre tract and they should have the land surveyed could have had no effect upon the

liability of either of the parties for damages for the wrongful cutting of the timber on Kremer's land. Brooks stated during the trial that he did not have the land surveyed; and there is no evidence in the record to indicate that such survey was made.

It is also argued on behalf of the appellant that a new trial should have been granted because no satisfactory proof was offered to show the actual value of the 209 trees cut on the appellee's land and because the jury failed to take into account the fact that it was the appellee's duty to minimize his damages by using or disposing of the 87 poles which were left lying on the ground before they became unfit for use. But we think that there was sufficient evidence to show the value of the trees wrongfully cut and that due credit was allowed for the failure of the appellee to minimize his damages by disposing of the 87 poles before they became unfit for use.

We find no reversible error in the record and the judgment of the lower court is affirmed.

Affirmed.

*Roberds, P. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.