571 So.2d 278 (1990)
Carlton Reed SULLIVAN and Avie Sullivan
v.
Robert A. HEAL, Jr. and Melissa A. Heal.
No. 89-CA-0553.
Supreme Court of Mississippi.
December 5, 1990.
*279 J. Dudley Williams, Aberdeen, for appellants.
Carter Dobbs, Jr., Amory, for appellees.
Before ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Carlton Sullivan filed suit in the Chancery Court of Monroe County asserting that he was induced through fraud to convey certain property owned by him to Robert (Bobby) and Melissa Heal. The lower court upheld the deed of conveyance and Sullivan has appealed to this Court presenting two issues for decision.

FACTS
Bobby Heal's father died when Bobby was one year old. He went to live with his grandparents, the appellants, when he was approximately eight to ten years old. Bobby received $390.00 per month from Social Security and his grandparents managed this money for him.
When Bobby became older, he married Melissa and they moved out of the grandparents' home. Sullivan gave Bobby a deed to the property upon which Sullivan's home was situated and reserved a life estate therein. Sullivan also gave Bobby a truck, which he purchased for $9,000.00. As part of the transaction, Bobby had to sell his own truck and give Sullivan the money he had received.
According to Sullivan, he bought the truck for Bobby with the understanding that Bobby would permit him to use it. The title to the truck was still in Sullivan's name and, as a result, Bobby could not obtain insurance. They returned to the dealer to get a new title.
One day, Sullivan asked to borrow the truck and Bobby refused. Without Bobby knowing, Sullivan took the truck and Bobby reported it stolen. Later, he discovered Sullivan had the truck and Bobby had to reconvey the house and property to Sullivan in order to get the truck back.
Bobby and his wife, Melissa, were living with Melissa's grandmother and they later moved into a home which was financed by FHA. On October 21, 1985, Sullivan again deeded his own property to Bobby and Melissa. That deed did not contain a clause reserving a life estate. Bobby and Melissa moved into the home while their grandfather, Sullivan, lived in a trailer next to the house. They tried to get a loan at Security Bank in Amory using Sullivan's property, which had been deeded to him, as security for the loan. Sullivan found out about the loan and he advised the President of Security Bank that Bobby could not use the property as collateral because he had retained a life estate in the property.
Sullivan claims that Bobby tricked him into deeding the property without reserving a life estate, which Bobby denied. Bobby and his family eventually moved out of the house. Sullivan filed a complaint alleging that Bobby got him to sign the deed through fraudulent representations. Bobby and Melissa filed a counterclaim alleging that they had to leave the home due to Sullivan's malicious acts and sought $5,000.00 in compensatory damages and $30,000.00 in punitive damages.
The lower court held that Sullivan did not sustain his burden of proof and that the Heals failed to establish merit on their counterclaim. The complaint and the counterclaim were both dismissed with prejudice.

LAW

I. DID THE LOWER COURT ERR IN FINDING THAT SULLIVAN FAILED TO SUSTAIN HIS BURDEN OF PROOF?
Sullivan maintains that he did not intend to convey the property to Bobby without reserving a life estate. On the other hand, Bobby claims that Sullivan "bugged" him for six months to take the house and property; that he made it clear to Sullivan that he would not move his family and sell their present home if Sullivan maintained control over the property; and that he was afraid that Sullivan would *280 try to take it away from him later like he did the truck.
Jacqueline Dendy, secretary for Attorney Jack Thomas, testified that one Linda Williams brought the deed to the Thomas' Office; that she gave her the information on how the deed should be prepared; and that Williams told Dendy she was bringing the deed in for Sullivan.
According to Bobby, he knew nothing about the deed until Sullivan told him to pick it up at Jack Thomas' office; that when he took the deed for Sullivan to sign it, Ely Wilson, George McCullough and Prentiss Rock were present. They all testified and the gist of their testimony was that Sullivan and Bobby had several conversations; that Bobby pointed out the "joint tenants" language and asked Ely Wilson to try to convince Sullivan that the deeds were the same; and that Wilson showed the deed to Sullivan and told him that he should talk with someone more knowledgeable about deeds.
Sullivan took the deed with him and kept it. He later brought the deed, already signed by him, and told Bobby that the deed was alright.
Fraud must be established by clear and convincing evidence. Gulf National Bank v. Wallace, 394 So.2d 864, 865 (Miss. 1980); Mosby v. Gandy, 375 So.2d 1024, 1028 (Miss. 1979). Inadequate consideration is not an issue here. In Burnett v. Smith, 93 Miss. 566, 47 So. 117 (1908), this Court said:
A man of sound mind may execute a will or a deed from any sort of motive satisfactory to him, whether that motive be love, affection, gratitude, partiality, prejudice, or even a whim or caprice.
Id. at 572, 47 So. at 118.
The facts of this case that negate fraud on the part of Bobby follow:
(1) Jacqueline Dendy testified that she prepared the deed pursuant to Linda Williams' instructions. Williams told her that she was bringing the deed for Sullivan.
(2) Sullivan signed the deed in Harvey Colburn's office[1]. He was not accompanied by the Heals. The only other person present was Colburn's bookkeeper.
(3) Sullivan had the deed in his possession for three or four days before signing it. He had ample opportunity to seek independent advice during this time.
We are of the opinion that Sullivan has failed to show that the lower court's ruling was manifestly in error on this issue and the issue is rejected.

II. DID THE LOWER COURT ERR IN DENYING SULLIVAN'S MOTION FOR A NEW TRIAL AND HIS MOTION TO OPEN JUDGMENT FOR ADDITIONAL TESTIMONY BASED ON NEWLY DISCOVERED EVIDENCE?
Jacqueline Dendy, a witness for the defendant, testified that she typed the deed which conveyed the property to Bobby and Melissa Heal; that Linda Williams, who did not testify at trial, gave Dendy instructions as to how the deed should be prepared and that Williams told her she was bringing the deed in for Sullivan; that she did not know Bobby or Melissa Heal and that she did not receive any instructions from them regarding the deed; and that she was given the copy of the first deed to get the property description for the deed that she drafted. Dendy never testified that she was instructed to copy the first deed and reserve the life estate for Sullivan.
Sullivan contends that the discovery of a possible mistake in drafting the deed entitled him to relief from the lower court judgment and that the lower court erred in not allowing him to develop a cause of action based on mistake. He further argues that the facts surrounding such cause of action were not known to him until his cross-examination of Jacqueline Dendy.
Mississippi Rules of Civil Procedure 60(b) (1987) provides the following:

*281 Mistakes; Inadvertence; Newly Discovered Evidence; Fraud, etc.
On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
... .
(2) accident or mistake[.]
Sullivan was aware that the new deed was different from the original deed. He had the deed in his possession several days before he signed it. When he signed the deed, he was in Harvey Colburn's office (Notary Public) and the only other person present besides Colburn was Colburn's bookkeeper. Bobby and Melissa did not accompany Sullivan to Colburn's office.
Before trial, Sullivan could have, and should have, interviewed the person who drafted the deed to determine what instructions were given as to the content of the deed and who gave the instructions. Bobby, however, claims that Sullivan failed to exercise reasonable diligence to obtain the evidence before trial. In Hutto v. Kremer, 222 Miss. 374, 76 So.2d 204 (1954), this Court held:
A party asking for a new trial on the ground of newly discovered evidence must satisfy the court that the evidence has come to his knowledge since the trial, and that it was not owing to a want of diligence on his part that it was not discovered sooner; and he must go further and show that the new evidence would probably produce a different result if a new trial were granted.
Id. at 385, 76 So.2d at 209.
This issue is resolved against Sullivan and the judgment of the lower court is affirmed.
AFFIRMED.
HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., dissents.
NOTES
[1] Harry Colburn was a Notary Public.